UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN– SOUTHERN DIVISION

CYNTHIA WOODS,

    Plaintiff,

v.

Case No.
Hon.

**DEMAND FOR JURY TRIAL**

LAFONTAINE VOLKSWAGEN, INC.,
(d/b/a LAFONTAINE VOLKSWAGEN OF DEARBORN),
MICHIGAN RECOVERY SERVICES, INC.,
BROWNSTOWN TOWNSHIP,
OFFICER DOE,
SARGENT DOE,

    Defendants.

## COMPLAINT & JURY DEMAND

*Cynthia Woods states the following claims for relief:*

### Jurisdiction

1. Plaintiff's claims present federal questions under the following statutes:

    a. The Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq*.

    b. The Truth In Lending Act, 15 U.S.C. § 1601 *et seq*.

    c. The Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. §1692k(d).

    d. The Civil Rights Act, 42 U.S.C. § 1983.

2. This court has subject matter jurisdiction over these federal questions under 18 U.S.C. § 1331.

3. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

## Parties

4. The Plaintiff to this lawsuit is Cynthia Woods who resides in Brownstown Township, MI.

5. The Defendants to this lawsuit are:

   a. LaFontaine Volkswagen, Inc. a Michigan a corporation, doing business as LaFontaine Volkswagen of Dearborn, ("LaFontaine") at 2200 Telegraph Rd., Dearborn, MI 48124.

   b. Michigan Recovery Services, Inc. ("MRS") a Michigan corporation with its primary place of business located at 3164 Freeway Lane in Saginaw, Michigan.

   c. Brownstown Township, located in Wayne County.

   d. Officer Doe, of the Brownstown Township Police Department ("BTPD"), who is a "state actor" for purposes of 42 U.S.C. § 1983.

   e. Sargent Doe, of the Brownstown Township Police Department ("BTPD"), who is a "state actor" for purposes of 42 U.S.C. § 1983.

## Venue

6. The transactions and occurrences which give rise to this action occurred in Wayne County.

7. Ms. Woods is a citizen of the State of Michigan and a resident of Wayne County.

8. LaFontaine is located in Wayne County, Michigan.

9. Brownstown Township is located in Wayne County, Michigan.

10. Officer Doe works for Brownstown Township in the BTPD, in Wayne County, Michigan.

11. Sargent Doe works for Brownstown Township in the BTPD, in Wayne County, Michigan.

12. Michigan Recovery Services does business in the Eastern District of Michigan.

13. The events giving rise to this complaint occurred in Wayne County, Michigan.

14. Venue is proper in the Eastern District of Michigan.

### Allegations Concerning the Purchase of the 2008 Infiniti G37

15. On November 2, 2013 Ms. Woods visited LaFontaine for the purpose of purchasing a vehicle.

16. Ms. Woods had received marketing letters from LaFontaine informing her that she was "pre-approved" and/or "pre-qualified" to purchase a vehicle.

17. During that visit, the dealership input Ms. Woods information into their system, and informed Ms. Woods that she was "approved" for the purchase of the 2008 Infiniti G37.

18. On November 20, 2013, Ms. Woods returned to LaFontaine to test drive the 2008 Infiniti G37 with her son, and decided to purchase the vehicle.

19. Ms. Woods executed a purchase agreement and retail installment sales contract with LaFontaine for a 2008 Infiniti G37, VIN# JNKCV64E88M120333 ("the vehicle").

20. The vehicle constitutes a "good" under Article 2 of the UCC, M.C.L. §440.2101, *et seq*.

21. On November 20, 2013, Ms. Woods tendered a $100.00 deposit, and informed the dealership she would return on Friday, November 22, 2013 to tender the remaining $900.00 of the down payment and pick-up the vehicle.

22. When Ms. Woods returned to LaFontaine on November 22, 2013, Andrew Maroudis– her salesman– informed her that although her first payment should be due on December 20, 2013, the dealership would extend that date by 10 days due to the Christmas holiday.

23. LaFontaine identified GM Financial as the party to whom Ms. Woods should make payments, and did so in writing consistent with M.C.L. § 440.9406.

24. LaFontaine's identification of GM Financial as the assignee of the contract to whom Ms.

      Woods should make payments was false.

25. After purchasing the vehicle, Ms. Woods made several calls to LaFontaine inquiring why she had not yet received the tags, the extra key, the car mats, and the payment book for the vehicle.

26. Ms. Woods called LaFontaine on several occasions asking to speak with Andrew Maroudis regarding the payment book, extra key, tags, and mats.

27. Each time, LaFontaine informed Ms. Woods that Mr. Maroudis was unavailable to take her calls, and she did not receive a return call from Mr. Maroudis or LaFontaine.

28. Ms. Woods also made a call to GM Financial, inquiring about the address to send her car payments.

29. The GM financial representative informed Ms. Woods that they needed to verify her employment.

30. When LaFontaine did not call her back, Ms. Woods returned to the dealership with her fiancé on December 7, 2013, to ask about the extra key, car mats, tags, and payment book which she had not yet received.

31. Andrew Maroudis informed Ms. Woods that LaFontaine needed to order the keys and mats.

32. During the conversation, Andrew Maroudis asked Ms. Woods why she had not completed the "approval call" regarding her loan.

33. Ms. Woods stated that she would call GM Financial.

34. When Ms. Woods contacted GM financial again, the representative informed her that she was not in their system.

35. Ms. Woods then began receiving denial letters from several companies– including Ally

Financial which is a business name for GM Financial– to whom she was unaware LaFontaine had submitted her information for financing.

36. On, or about, December 20, 2013 Ms. Woods received a denial letter from Michigan First Credit Union declining to finance her loan on the a 2008 Infiniti G37.

37. Ms. Woods called Michigan First Credit Union and was informed that LaFontaine had requested they send her the denial letter.

38. On December 20, 2013, the LaFontaine General Manager called Ms. Woods insisting that she bring the vehicle in for servicing for "a problem with the breaks."

39. Ms. Woods called Infiniti, who stated that there were no recalls, or known brake problems, with the 2008 Infiniti G37.

40. On December 26, 2013, Ms. Woods received another call from LaFontaine regarding service for her breaks.

41. During that call, Ms. Woods informed them that she had driven 1,000 miles in the car, had not experienced any issues with the car, or the breaks, and would not be bringing the car into the dealership.

42. December 26, 2013 was the last contact Ms. Woods had with LaFontaine– no information was provided regarding the address to which she should send her payments.

43. GM Financial never sent a payment coupon book identifying where Ms. Woods should send payments, and instead sent denial notices informing Ms. Woods that GM Financial (also known as Ally Financial) would not be financing her car.

44. Lafontaine never provided any alternative payment information– despite Ms. Woods' repeated requests for the information.

**Repossession of the 2008 Infiniti G37**

45. Some time in January 2014, Michigan Recovery Services, Inc. ("MRS") was engaged by LaFontaine to repossess the vehicle.

46. Repossession of vehicles is an inherently dangerous activity and LaFontaine may be held responsible for all actions of Michigan Recovery and its agents.

47. On January 21, 2014, MRS arrived at Ms. Woods' home to take her car– on the authority of LaFontaine.

48. At that time, Ms. Woods was not in breach of her contract, and instead had been attempting to pay for her vehicle.

49. The MRS employee did not provide Ms. Woods with any documents regarding the repossession, however, the screen in the MRS truck showed that Ms. Woods' vehicle belonged to LaFontaine.

50. Ms. Woods objected to the repossession, and she contacted the BTPD to stop the repossession of her vehicle.

51. Brownstown Township dispatched two officers to Ms. Woods' home, Officer Doe and Sargent Doe.

52. Ms. Woods showed those officers the paperwork for the vehicle, showing that she, not LaFontaine, owed the vehicle and that GM Financial was the secured creditor.

53. The Officers ordered Ms. Woods to give the MRS employee the keys, and remove her personal belongings from the vehicle.

54. The MRS employee then took possession of Ms. Woods' Infiniti, leaving her with only a business card identifying MRS as the repossessing party.

55. LaFontaine's repossession of Ms. Woods' was wrongful and without legal right.

56. MRS breached the peace and was not permitted to take possession of the vehicle.

57. The police officers had no legal authority to direct Ms. Woods to turn over the vehicle.

58. The officers did not hesitate, appear to consult any resources, or individuals, for information concerning the manner in which to handle the situation, and thus gave the appearance that they acted pursuant to training rather than *ad hoc* action.

59. Upon information and belief, Brownstown Township has a policy under which it instructs its police officers to intervene on behalf of repossession companies to assist them in taking vehicles, even where an objection has been presented by the person in possession of that vehicle.

60. Lafontaine never sent any follow up correspondence advising of the repossession or adverse action.

61. Lafontaine never returned Ms. Woods's $1,000 down payment.

62. Lafontaine has a policy and practice of spot delivering cars and repossession those cars if they are unable to "fund" the deal.

## COUNT I – Equal Credit Opportunity Act (LaFontaine)

63. Ms. Woods incorporates the preceding allegations by reference.

64. LaFontaine is a "creditor" for purposes of the ECOA.

65. LaFontaine informed Ms. Woods that she was "pre-approved" for vehicle financing.

66. Ms. Woods submitted a credit application to LaFontaine on November 2, 2013 relating to the acquisition of the vehicle.

67. LaFontaine was required under ECOA to take action on Ms. Woods's credit application

within 30 days.

68. LaFontaine initially informed Ms. Woods that the credit application she submitted had been approved.

69. At the time LaFontaine informed Ms. Woods that the credit application was approved, LaFontaine knew that it treats all applications as conditionally approved subject to being able to sell the resulting credit obligation to a lender through a "funding" process.

70. The initial credit approval by LaFontaine was false, and LaFontaine knew the notice to be false at the time it was issued.

71. The credit approval by LaFontaine was false, and therefore in violation of the ECOA.

72. LaFontaine subsequently denied Ms. Woods credit.

73. LaFontaine never sent an adverse action notice, as required by the ECOA.

74. Ms. Woods suffered damages as a result of LaFontanie's violation of the ECOA.

## COUNT II – Truth In Lending Act (LaFontaine)

75. Ms. Woods incorporates the preceding allegations by reference.

76. At all relevant times LaFontaine– in the ordinary course of its business– regularly extended, or offered, consumer credit for which a finance charge is, or may be imposed, or which, by written agreement, is payable in more than 4 installments.

77. LaFontaine– in the ordinary course of its business– was the person, or entity, to whom the transaction which is the subject of this action is initially payable, and is a "creditor" under TILA, 15 U.S.C. § 1602(f) and regulation Z § 226.2(a)(17).

78. LaFontaine was required to make disclosures pursuant to 15 U.S.C. § 1638 prior consummation the financing of the vehicle.

79. Those disclosures were required to be made in writing, in a form that could be kept by the consumer so that consumers may shop for credit prior to engaging in a credit transaction.

80. LaFontaine failed to make those disclosures in a timely fashion in violation of 15 U.S.C. § 1638(a)(4).

81. LaFontaine failed to make those disclosures in a form that Ms. Woods could keep, and instead took the disclosures back from her after obtaining her signature.

82. The TILA disclosures prepared by LaFontaine inaccurately failed to identify any demand feature which would be triggered by the failure to obtaining "funding" for the deal.

83. The disclosures that LaFontaine prepared falsely assumed that her initial down payment was made on the same day that the car was delivered. Consequently, the disclosures falsely stated the effective APR, finance charge, and Amount financed.

84. Ms. Woods suffered damages as a result of this violation of the TILA.

### COUNT III – Civil Rights Violation, 42 U.S.C. § 1983 (Brownstown Township, Officer Doe, Sargent Doe).

85. Ms. Woods incorporates the preceding allegations by reference.

86. Brownstown Township has implemented a policy under which its police officers intervene on behalf of repossession agents who are engaged in the taking of vehicles.

87. Brownstown Township officers acted in concert with the Michigan Recovery Services repossession agent to unlawfully deprive Ms. Woods of her personal property in the 2008 Infiniti.

88. As a result of the Brownstown Township policy, and Defendant Officers' unlawful, malicious, reckless, and indifferent acts or omissions, the State of Michigan has deprived Ms. Woods of her rights privileges, or immunities secured under the Constitution and laws

of the United States and 42 U.S.C. § §1983 including:

    a. Ms. Woods' right to be free from an unreasonable seizure of her property as guaranteed by Amendments IV and XIV of the United States Constitution, by ordering her to turn over her vehicle to MRS without the benefit of notice or an opportunity to be heard.

    b. Ms. Woods' right to due process of law and to be free from egregious official misconduct, as guaranteed by Amendment XIV of the United States Constitution, by refusing to give her due process before depriving her of the 2008 Infiniti.

89. As the result of Brownstown Township, Officer Doe, and Sargent Doe's actions, Mr. Woods has been unlawfully deprived of her personal property without due process of law.

90. Ms. Woods has suffered damages resulting from these violations of her civil rights.

## COUNT IV – Violations of the FDCPA, 15 U.S.C. §1692, *et seq*. (MRS)

91. Ms. Woods incorporates the preceding allegations by reference.

92. At all relevant times MRS– in the ordinary course of its business– regularly engaged in the practice of repossessing vehicles on behalf of others.

93. MRS is a "debt collector" under the FDCPA, 15 U.S.C. § 1692f(6).

94. Ms. Woods is a "consumer" as defined by 15 U.S.C. § 1692a(3).

95. MRS' actions in repossessing Ms. Woods' vehicle violated the FDCPA, including, but not limited to 15 U.S.C. § § 1692f(6).

96. As the result of MRS's violations of the FDCPA, Ms. Woods has suffered damages.

97. Ms. Woods is entitled to actual damages, statutory damages, and attorney fees and costs.

### COUNT V – Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. § 492.101, *et seq*. (LaFontaine).

98. Ms. Woods incorporates the preceding allegations by reference.

99. This claim arises under the Michigan Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. § 492.101, *et seq*.

100. LaFontaine failed to properly include in the retail installment contract each and every one of the material terms of the sale, and omitted the single most relevant term– whether the deal was final or conditional.

101. The omission of this material term constitutes a violation of M.C.L. § 492.112(a).

102. Ms. Woods suffered damages as a result of this violation of the MVSFA.

### COUNT VI – Common Law Conversion (LaFontaine).

103. Ms. Woods incorporates the preceding allegations by reference.

104. LaFontaine converted Ms. Woods' vehicle by exercising dominion over it, and asserting that it was the true legal owner of the vehicle.

105. LaFontaine's dominion over Ms. Woods' vehicle was inconsistent with, and in repudiation of, Ms. Wood's right to continue to peaceably posses and use the vehicle.

106. LaFontaine's dominion over Ms. Woods' vehicle deprived her of the possession and use of her personal property.

107. Ms. Woods suffered damages as a result of this conversion of her vehicle by LaFontaine.

### COUNT VII– Statutory Conversion, M.C.L. § 600.2919a (LaFontaine).

108. Ms. Woods incorporates the preceding allegations by reference.

109. After obtaining Ms. Woods' signature on all documents necessary to convey title and complete the financing of the vehicle, LaFontaine delivered the vehicle to Ms. Woods.

110. At that time, Ms. Woods was the legal owner of the 2008 Infiniti G37.

111. LaFontaine caused MRS to take the vehicle from Ms. Woods by asserting a legal right to the vehicle.

112. LaFontaine had no right to possess the vehicle, and was not the legal owner at the time.

113. LaFontaine was not acting on behalf of any individual or entity with the right to possess the vehicle.

114. LaFontaine illegally retook possession without the permission of Ms. Woods or other legal authorization through MRS.

115. LaFontaine's actions in taking possession of the vehicle was wilful or intentional, and in derogation of the contract of sale.

116. MRS converted the vehicle and took it from Ms. Woods over her objection.

117. LaFontaine secreted the vehicle from Ms. Woods.

118. These acts constitute a willful, or intentional, conversion under M.C.L. § 600.2919a.

119. Ms. Woods suffered damages as a result of this unlawful conversion.

### COUNT VIII – UCC Article 2 and 9 (LaFontaine).

120. Ms. Woods incorporates the preceding allegations by reference.

121. This claim is brought under Article 9 of the revised Uniform Commercial Code, M.C.L. § 440.9101 *et seq*.

122. The vehicle constitutes a "good" under Article 2 of the UCC as codified in M.C.L. § 440.2101, *et seq*.

123. LaFontaine breached its contract with Ms. Woods by engaging MRS to repossess the vehicle without breach.

124. LaFontaine failed to act in good faith and instead falsely identified GM Financial as the party to whom Ms. Woods should make payment.

125. LaFontaine failed to send a proper notice of intent to dispose of the property to Ms. Woods.

126. The failure to send this notice constituted a violation of Article 9 of the UCC, M.C.L. § 440.9611.

127. Ms. Woods was forced to contact local law enforcement because MRS attempted to take Ms. Woods' vehicle without paperwork or other documentation, and without prior notice.

128. This manner of repossession by LaFontaine's agent MRS breached the peace.

129. This breach of the peace constituted a violation of Article 9 of the UCC, M.C.L. § 440.9609.

130. LaFontaine effected this repossession wrongfully, and without legal right.

131. Ms. Woods suffered the damages as a result of this violation of Article 9 of the UCC.

### COUNT IX – Michigan Collection Practices Act (LaFontaine).

132. Ms. Woods incorporates the preceding allegations by reference.

133. LaFontaine is a "regulated party" as that term is defined by M.C.L. §445.251(b).

134. Lafontaine has violated the MCPA by engaging in the prohibited acts, including, but not limited to M.C.L. §445.252(a), (e), (f), and (q).

135. LaFontaine's violations were willful.

136. Ms. Woods has suffered damages as a result of LaFontaine's violations of the MCPA.

### COUNT X – Michigan Occupational Code (MRS)

137. Ms. Woods incorporates the preceding allegations by reference.

138. MRS is a "collection agency" as that term is defined by M.C.L. §339.901.

139. MRS has violated the MCPA by engaging in the prohibited acts, including, but not limited

to M.C.L. § 339.915(a), (e) and (f).

140. MRS' violations were willful.

141. Ms. Woods has suffered damages as a result of MRS' violations of the MCPA.

## COUNT XI – Conversion

142. Ms. Woods incorporates the preceding allegations by reference.

143. MRS and LaFontaine have exercised improper dominion and control over the vehicle.

144. MRS's and LaFontaine's dominion over Ms. Woods' personal property was inconsistent with Ms. Woods' right to continue to peaceably possess and use the vehicle.

145. MRS's and LaFontaine's dominion over Ms. Wood's vehicle deprived her of the possession and use of her personal property.

146. Ms. Woods has suffered damages as a result of MRS's and LaFontaine's conversion of her vehicle.

## JURY DEMAND

147. Cynthia Woods demands a jury trial in this case.

## REQUEST FOR RELIEF

148. Ms. Woods requests that this Honorable Court grant the following relief:

   a. *Assume jurisdiction over this case including all supplemental claims.*

   b. *Award actual damages for items including emotional distress, mental aguish, frustration, humiliation, and embarrassment.*

   c. *Award statutory and punitive damages.*

   d. *Award statutory costs and attorney fees.*

        Respectfully Submitted,


        By: s/ Emily E. Reagan
        Emily E. Reagan (P-78410)
        LYNGKLIP & ASSOCIATES
        CONSUMER LAW CENTER, PLC
        Attorney for Cynthia Woods
        24500 Northwestern Highway, Ste. 206
        Southfield, MI 48075
        (248) 208-8864
        Emily@MichiganConsumerLaw.Com

Dated: July 24, 2014